IN THE EASTERN DISTRICT OF MISSOURI
UNITED STATES OF AMERICA

| | |
|---|---|
| SARAH TIMPER<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHERN PIPE & SUPPLY CO. INC.,<br><br>Serve:<br><br>Registered Agent<br>Dotprocessagents<br>1410 N Porter Ave<br>Norman, OK 73071<br><br>and<br><br>TYQUARIS HOZE<br><br>Serve:<br><br>697 Magnolia Rd.<br>Laurel, MS 39443<br><br>Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**COMES NOW** Plaintiff, Sarah Timper, by and through her undersigned counsel and for her Petition against Defendants Southern Pipe & Supply Co Inc. and Tyquaris Hoze states to the Court as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff, Sarah Timper, is a resident and citizen of the State of Missouri.

2. At the present time, and at all relevant times herein, Defendant Southern Pipe & Supply Co Inc. (hereinafter "Southern Pipe") is/was a domestic corporation incorporated in the State of Mississippi with its principal place of business located at 4330 Highway 39N, Meridian, MS 39301.

3. Defendant Tyquaris Hoze (hereinafter "Hoze") is domiciled in the State of Mississippi and a resident and citizen of the State of Mississippi.

4. This court has original jurisdiction over the matter and parties pursuant to 28 USC § 1332 as there is complete diversity amongst the parties and the value in controversy exceeds $75,000, exclusive of interest and costs.

5. Defendants Southern Pipe and/or Hoze owned the 2016 Peterbilt Motors ("Peterbilt Truck") tractor, Vehicle Identification Number ANPXGGGG80D408706, Hoze was operating at the time of the collision.

6. At all times relevant to this case, Defendant Hoze was an agent and/or employee (hereinafter to refer to statutory or otherwise) of Defendant Southern Pipe and was acting within the course and scope of his agency and/or employment.

7. At the time of the collision referenced in this complaint, Defendant Southern Pipe was registered with the Federal Motor Carrier Safety Administration as an interstate commercial motor carrier.

8. Prior to December 19, 2024, Southern Pipe had applied for operating authority as a contract carrier to the Federal Motor Carrier Safety Administration.

9. As of December 19, 2024, Southern Pipe had authority to operate as a contract carrier.

10. At all times relevant herein and at the time of this incident, Defendant Southern Pipe was a commercial motor carrier engaged in interstate commerce, transporting goods throughout the United States via tractor-trailers.

11. At all times relevant herein and at the time of this incident, Defendant Southern Pipe was acting individually and through its drivers, agents, servants, joint venturers, and/or employees, each of whom were acting within the course and scope of their employment with Defendant Southern Pipe.

12. At all times relevant herein and at the time of this incident, Defendant Hoze was operating a tractor-trailer in the course and scope of his employment and agency with Defendant Southern Pipe.

13. Defendant Southern Pipe is liable for all acts and omissions of Defendant Hoze while he was operating within course and scope of employment and/or agency, under the doctrine of *respondeat superior*.

14. Defendant Southern Pipe, and its agents, servants, employees, and drivers, including Defendant Hoze, at all relevant times set forth herein, were subject to the rules and regulations contained and set forth in Title 49, Code of Federal Regulations (Federal Motor Carrier Safety Regulations).

15. In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer." 49 C.F.R. §390.5.

16. In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety. "Employee" includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle). 49 C.F.R. §390.5.

17. At all times relevant to this case, Defendant Hoze was a driver of the Peterbilt Truck and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

18. In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration. 49 C.F.R. §390.5.

19. At all times relevant to this case, the Peterbilt Truck driven by Defendant Hoze was a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

20. In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it. 49 C.F.R. §390.5.

21. At all times relevant to this case, Defendant Southern Pipe was an "employer," as defined by the Motor Carrier Safety Regulations.

22. At the time of this incident and at all times herein mentioned, Defendant Hoze was operating the Peterbilt Truck as a driver for Defendant Southern Pipe.

23. On or about December 19, 2024, Plaintiff Timper was operating her motor vehicle, a 2018 Hyundai Elantra traveling northbound on Highway 55.

24. At all times pertinent times hereto, interstate 55 is an open and public thoroughfare located in St. Louis County, State of Missouri.

25. On the same date and time, Defendant Hoze was operating the Peterbilt Truck headed northbound on Highway 55 traveling in a lane to the left of Plaintiff's vehicle.

26. On the same date and time, the Peterbilt Truck, operated by Defendant Hoze, swerved to the right and entered the lane in which Plaintiff was operating her motor vehicle.

27. On the same date and time, the Peterbilt Truck, struck Plaintiff's vehicle, forcing her vehicle off the right side of the road and to strike a rock bluff.

28. At the time of the incident, the truck operated by Defendant Hoze bore the name of Defendant Southern Pipe as well as its DOT number (79183) and/or MC (operating authority) number MC-781961.

29. The Federal Motor Carrier Safety Administration publishes data on commercial motor carriers, including Southern Pipe, within the Safety Measurement System, designated into several categories of safety known as "BASIC" (Behavioral Analysis & Safety Improvement Categories).

30. Leading up to this incident, Defendant Southern Pipe was deficient in several BASIC safety categories, including Unsafe Driving.

31. Following this incident and to the time of the filing of this Complaint, Defendant Southern Pipe was deficient in several BASIC safety categories, including Unsafe Driving.

32. Following this incident and to the time of the filing of this Complaint, Defendant Southern Pipe was deficient in several BASIC safety categories, including Hours of Service Compliance.

33. Following this incident and to the time of the filing of this Complaint, Defendant Southern Pipe was deficient in several BASIC safety categories, including Vehicle Maintenance.

34. Leading up to this incident, Defendant Southern Pipe was deficient in several BASIC safety categories, including Controlled Substances and Alcohol.

35. Following this incident and to the time of the filing of this Complaint, Defendant Southern Pipe was deficient in several BASIC safety categories, including Controlled Substances and Alcohol.

36. Following this incident and to the time of the filing of this Complaint, Defendant Southern Pipe was deficient in several BASIC safety categories, including Driver Fitness.

37. The negligence of Defendants Southern Pipe and Hoze, directly caused or directly contributed to cause severe and permanent injuries to Plaintiff.

38. As a direct and proximate result of this incident and the direct and proximate result of the negligence of Defendants Southern Pipe and Hoze, Plaintiff was injured.

## COUNT I
## NEGLIGENCE AGAINST DEFENDANT HOZE

**COMES NOW** Plaintiff and repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above in the General Allegations as if they were set forth herein at length against Defendant Hoze and further states:

39. At the time of this incident, Defendant Hoze negligently operated the tractor-trailer that caused this incident on the above stated date and time by:

a) Failing to exercise the highest degree of care in violation of R.S.Mo 304.012.1;

b) Failing to keep a proper lookout;

c) Failing to maintain a single lane in violation of R.S.Mo 304.015;

d) Following too closely;

e) Failing to keep a careful lookout in order to reasonably apprehend and/or to observe and heed road and traffic conditions then and there existing

f) Failing to exercise due and proper care and diligence to avoid said crash;

g) Failing to take proper remedial action which could have avoided this collision or minimized the impact;

h) Operating the tractor-trailer without adequate training and experience;

i) Operating the tractor-trailer when not properly qualified to do so;

j) Driving while tired and/or fatigued in violation of 49 CFR 392.3;

k) Driving while under the unsafe side-effects of prescription medication;

l) Driving beyond the 8-hour limit since the end of the last off duty or sleeper period of at least 30 minutes in violation of 49 CFR 395.3(a)(3)(ii);

m) Driving beyond the 11-hour driving limit in a 14-hour period in violation of 49 CFR 395.3(a)(3);

n) Driving reckless in violation of 49 CFR 392.2R; and

o) Such further negligent and careless acts and omissions as discovery and the evidence will reveal.

40. As a direct and proximate result of Defendant Hoze's negligence as described herein, Plaintiff suffered the following injuries to his person:

a. Neck pain;

b. Disc herniation at C5-6;

c. Cervical injections;

d. Surgical recommendation for C5-6 Anterior Cervical Discectomy and Fusion;

e. Blood in urine;

f. Traumatic head injury

  a. Acute post traumatic headaches;

  b. Post-occipital headaches

g. Back pain;

h. Pain;

i. Emotional distress;

j. Loss of sleep;

k. Loss of mobility and motion;

l. Loss of enjoyment of life;

m. Loss of ability to perform day-to-day activities;

n. Anxiety;

o. Loss of recreational activity;

p. Numbness and tingling;

q. All the bones, muscles, tendons, tissues, joints, ligaments, vessels, nerves and other soft tissue were severely wrenched, twisted, torn, impacted, crushed and otherwise damaged;

r. Plaintiff's nerves and entire nervous system were disturbed and injured.

All of which has required extensive medical treatment and will require additional treatment.

41. As a direct and proximate result of Defendant Hoze's negligence, Plaintiff has sustained damage, caused to undergo reasonable and necessary medical care and treatment and to incur expenses.

42. As a direct and proximate result of Defendant Hoze's negligence, Plaintiff is reasonably certain to sustain additional costs and damages in the future and her injuries are permanent and progressive in nature.

43. Defendant Hoze knew or should have known that his conduct as described herein created a high degree of probability of injury/death.

**WHEREFORE** Plaintiff prays for judgment against Defendant Hoze in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff, and for such other relief this Court deems just and proper under the circumstances.

**COUNT II**
**NEGLIGENCE *PER SE***

**COMES NOW** Plaintiff and repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above in the General Allegations as if they were set forth herein at length against Defendant Hoze and further states:

44. That Defendant Hoze was negligent *per se* in that he failed to maintain a single lane in violation of RSMo. § 304.015.

45. That Plaintiff is within the class of persons statute RSMo. § 304.015 was designed to protect.

46. That the injuries sustained by Plaintiff were of the kind said ordinance was designed to prevent.

47. As a direct and proximate cause of Defendant's negligence, Plaintiff has suffered injuries as further referenced above.

**WHEREFORE** Plaintiff prays for judgment against Defendant Hoze in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff, and for such other relief this Court deems just and proper under the circumstances.

**COUNT III**
**STATUTORY EMPLOYMENT/LOGO/LEASE LIABILITY AGAINST DEFENDANT SOUTHERN PIPE**

**COMES NOW** Plaintiff and repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above in the General Allegations as if they were set forth herein at length against Defendant Southern Pipe and further states:

48. Based upon all aforementioned allegations, Defendant Southern Pipe is vicariously liable for the negligence of Defendant Hoze based upon the doctrines of statutory employment, logo, and/or lease liability.

**WHEREFORE** Plaintiff prays for judgment against Defendant Southern Pipe in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff, and for such other relief this Court deems just and proper under the circumstances.

**COUNT IV**
**VICARIOUS LIABILITY AGAINST DEFENDANT SOUTHERN PIPE**

**COMES NOW** Plaintiff and repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above in the General Allegations as if they were set forth herein at length against Defendant Southern Pipe and further states:

49. At all times relevant, Defendant Hoze was acting in the course and scope of his agency and/or employment with Defendant Southern Pipe.

50. Based upon the prior allegations, Defendant Southern Pipe is vicariously liable for the negligence of Defendant Hoze based upon the doctrines of agency and respondeat superior.

**WHEREFORE** Plaintiff prays for judgment against Defendant Southern Pipe in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff, and for such other relief this Court deems just and proper under the circumstances.

## COUNT V
## INDEPENDENT NEGLIGENCE AGAINST DEFENDANT SOUTHERN PIPE

**COMES NOW** Plaintiff and repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above in the General Allegations as if they were set forth herein at length against Defendant Southern Pipe West and further states:

51. At all times relevant, Defendant Southern Pipe was operating as an interstate motor carrier pursuant to authority granted to it by the U.S. Department of Transportation.

52. Throughout its existence, Defendant Southern Pipe has, or should have been, aware of the existence of the Federal Motor Carrier Safety Regulations.

53. As an interstate motor carrier, Defendant Southern Pipe has a duty, to follow and comply with the Federal Motor Carrier Safety Regulations.

54. The various safety regulations included within Parts 390 – 397, of which Defendant Southern Pipe had a duty to follow, include, but are not limited to, the following:

a. Defendant Southern Pipe had an independent duty to require observance by its drivers of any duty or prohibition imposed upon the drivers by the Federal Motor

Carrier Safety Regulations. 49 C.F.R. §390.11;

b. Defendant Southern Pipe had a duty to not require or permit a driver, including Defendant Hoze, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. 49 C.F.R. §392.3;

c. Defendant Southern Pipe had a duty to not allow or permit a driver, including Defendant Hoze, to operate a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle. 49 C.F.R. §391.11.;

d. Defendant Southern Pipe had an independent duty not to aid, abet, encourage or require any of its employees to violate the safety regulations contained within Chapter 390. 490 C.F.R. §390.13;

e. Defendant Southern Pipe had an independent duty to prohibit its employees from driving a commercial vehicle unless the employee had first completed and furnished to Defendant Southern Pipe an application for employment that meets the requirements as set forth in 49 C.F.R. §391.21(b);

f. Defendant Southern Pipe had an independent duty to make investigations and inquiries with respect to each driver it employs and to do so in the manner prescribed in 49 C.F.R. §391.23;

g. Defendant Southern Pipe had an independent duty to obtain the motor vehicle record of every driver it employs, including Defendant Hoze, at least once every twelve months in determine whether that driver continues to meet the minimum

requirements for safe driving or is disqualified to drive a commercial motor vehicle. 49 C.F.R. §391.25;

h. Defendant Southern Pipe had an independent duty require each of its drivers, including Defendant Hoze, to furnish it with a list of all violations of motor vehicle traffic laws and ordinances of which he/she has been convicted in the preceding 12 months. 49 C.F.R. §391.27;

i. Defendant Southern Pipe had an independent duty to prohibit its employees, including Defendant Hoze, from driving until the driver had successfully completed a road test and been issued a certificate of driver's road test. 40. C.F.R. §391.31;

j. Defendant Southern Pipe had an independent duty to ensure that its drivers, including Defendant Hoze, were physically qualified to operate a commercial motor vehicle and that its drivers had undergone the necessary examinations in the required timeframes as set forth within the Federal Motor Carrier Safety Regulations. 40 C.F.R. §391 – Subpart E; and

k. Defendant Southern Pipe had an independent duty to inspect, repair, and maintain, all of the motor vehicles subject to its control, including the motor vehicle operated by Defendant Hoze on the day of the aforementioned incident, and to ensure that the motor vehicle and all of its parts and accessories were in proper operating condition at all times, including at the time of the aforementioned incident. 40 C.F.R. §396.3.

l. Defendant Southern Pipe had an independent duty to ensure that its drivers, including Defendant Hoze, followed the Hours of Service Regulations and prohibit its employees from driving a commercial vehicle beyond the 8-hour limit since the end of the last off duty or sleeper period of at least 30 minutes. 49 CFR 395.3(a)(3)(ii);

m. Defendant Southern Pipe had an independent duty to ensure that its drivers, including Defendant Hoze, followed the Hours of Service Regulations and prohibit its employees from driving a commercial vehicle beyond the 11-hour driving limit in a 14-hour period. 49 CFR 395.3(a)(3);

n. Defendant Southern Pipe had an independent duty to prohibit its employees from driving a commercial vehicle while their field of view was obstructed. 49 CFR 393.60(e);

o. Defendant Southern Pipe had an independent duty to prohibit its drivers, including Defendant Hoze, from driving reckless. 49 CFR 392.2R;

p. Defendant Southern Pipe had an independent duty to ensure that its drivers, including Defendant Hoze, were instructed regarding, knowledgeable of and complied with all applicable Federal Motor Carrier Safety Regulations. 49 CFR 390.3(e);

55. That Defendant Southern Pipe had a duty to comply with the Federal Motor Carrier Safety Regulations including the specific aforementioned regulations.

56. That it is custom and standard in the motor carrier industry to have in place an adequate safety program administered by competent and adequately trained safety personnel to ensure that the motor carrier and its drivers are adhering to the Federal Motor Carrier Safety

Regulations, including but not limited the specifically aforementioned regulations.

57. That, at all times prior to the aforementioned collision, Defendant Southern Pipe failed to have in place an adequate safety program.

58. As a result of its inadequate and/or non-existent safety program, Defendant Southern Pipe violated numerous Federal Motor Carrier Safety Regulations including, but not limited to the specifically aforementioned regulations prior to the aforementioned incident with Plaintiff.

59. As a result of its inadequate and/or inexistent safety program, Defendant Southern Pipe allowed its drivers, including Defendant Hoze, to violate numerous Federal Motor Carrier Safety Regulations including, but not limited to the specifically aforementioned regulations prior to the aforementioned incident.

60. That Defendant Southern Pipe's violation of numerous Federal Motor Carrier Safety Regulations, including the specifically aforementioned regulations created a danger to the health, welfare, and safety of the public, including Plaintiff.

61. Defendant Southern Pipe was thereby negligent in that it failed to implement an adequate safety program and it violated numerous Federal Motor Carrier Safety Regulations, including but not limited to the specifically aforementioned regulations.

62. Defendant Southern Pipe was thereby negligent in that it failed to implement an adequate safety program and it failed to ensure that its agents, employees and drivers, including Defendant Hoze, complied with the Federal Motor Carrier Safety Regulations, including but not limited to the specifically aforementioned regulations.

63. As a direct and proximate result of the independent negligence of Defendant Southern Pipe, Plaintiff was injured as aforementioned.

**WHEREFORE** Plaintiff prays for judgment against Defendant Southern Pipe in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff, and for such other relief this Court deems just and proper under the circumstances.

**COUNT VI**
**INDEPENDENT NEGLIGENCE AGAINST DEFENDANT SOUTHERN PIPE BASED UPON NEGLIGENT HIRING/RETENTION**

**COMES NOW** Plaintiff and repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above in the General Allegations as if they were set forth herein at length against Defendant Southern Pipe and further states:

64. At all times prior to the aforementioned collision, Defendant Southern Pipe had a duty owed to the general public, including Plaintiff, imposed by law and regulation, to diligently and adequately screen potential drivers to the extent mandated by the Federal Motor Carrier Safety Regulations.

65. Such duties include, but are not limited to:

a) To obtain a completed employment application before permitting an agent, servant, and/or employee drive its commercial motor vehicle. 49 C.F.R. §391.21;

b) To investigate the agents, servants, and/or employee's driver's employment record during the preceding three years by all reasonable means. 49 C.F.R. §§391.23(a)(2), 391.23(c);

c) To inquire into the agent's, servant's, and/or employee's driving record within 30 days after employment begins. 49 C.F.R. §391.23(a);

d) To require a successfully completed road test before commencing employment, and permitting the applicant, agent, servant, and/or employee to drive a commercial motor vehicle. 49 C.F.R. §391.31(a);

e) To investigate the driver's safety performance history with Department of Transportation regulated employer during the preceding three years. 49 C.F.R. §391.23(2);

f) Ensure that its driver was physically qualified to operate a tractor-trailer and had a valid and current DOT medical examiner's certificate. 49 C.F.R. §391.41; and

g) Ensure that its driver had no current diagnosis of high blood pressure likely to interfere with the ability to operate a commercial motor vehicle safely. 49 C.F.R. §391.41(b)(6).

66. Defendant Southern Pipe had a duty to comply with all of the above and below listed Laws, Federal Regulations, Codes, and/or Missouri Statutes, so as to protect the general public, including the Plaintiff, from the unsafe operation of commercial motor vehicles by its drivers.

67. Defendant Hoze was unqualified to operate a commercial motor vehicle due to his driving history, inexperience, lack of skill, lack of training, lack of knowledge, and physical medical condition.

68. That, because of Defendant Hoze's aforementioned inadequacies, Defendant Southern Pipe should not have hired him to operate a commercial motor vehicle.

69. That Defendant Southern Pipe knew, or through the exercise of ordinary care, should have known that Defendant Hoze was unqualified to safely operate a commercial motor vehicle.

70. That by failing to properly and adequately screen and investigate its drivers, including Defendant Hoze, before and during employment, Defendant Southern Pipe violated numerous Federal Motor Carrier Safety Regulations, including but not limited to those specifically identified in this count.

71. Had Defendant Southern Pipe obeyed the Federal Motor Carrier Safety Regulations, including but not limited to those specifically identified in this count, it could have learned that Defendant Hoze was unqualified to safely operate a commercial motor vehicle.

72. Defendant Hoze's negligent actions on the day of the incident with Plaintiff were consistent with, related to, and a product of his aforementioned inadequacies in operating a commercial motor vehicle.

73. Defendant Southern Pipe's actions and omissions in hiring Defendant Hoze, including their violations of the Federal Motor Carrier Safety Regulations, was the proximate cause of the injuries and damages sustained by Plaintiff resulting from the aforementioned fork lift incident.

**WHEREFORE** Plaintiff prays for judgment against Defendant Southern Pipe in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff, and for such other relief this Court deems just and proper under the circumstances.

## COUNT VII
## INDEPENDENT NEGLIGENCE AGAINST DEFENDANT SOUTHERN PIPE BASED UPON NEGLIGENT TRAINING

**COMES NOW** Plaintiff and repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above in the General Allegations as if they were set forth herein at length against Defendant Southern Pipe and further states:

74. Defendant Southern Pipe owed the general public, including Plaintiff, a duty to properly train its drivers, including Defendant Hoze, on the safe operation of a tractor-trailer.

75. Defendant Southern Pipe failed to properly instruct Defendant Hoze on the safe operation of a tractor-trailer.

76. Defendant Southern Pipe owed the general public, including Plaintiff, a duty to properly train its drivers, including Defendant Hoze, on the safety regulations set forth in the Federal Motor Carrier Safety Regulations.

77. At all times prior to the aforementioned collision, Defendant Southern Pipe had a duty, imposed by law and regulation, to diligently and adequately screen potential drivers to the extent mandated by the Federal Motor Carrier Safety Regulations.

78. Such duties include, but are not limited to:

a) To require and verify that its drivers pass a knowledge and skills test as prescribed by the Federal Motor Carrier Safety Regulations. 49 C.F.R. §380.109 and 49 C.F.R. §380.509;

b) To train its drivers on the Federal Motor Carrier Safety Regulations pertaining to medical certification, medical examination procedures, general qualifications, responsibilities, and disqualifications. 49 C.F.R. §380.503;

c) To ensure that its drivers have been properly trained and to show proof of that training with a training certificate. 49 C.F.R. §380.505;

(d) To ensure that its drivers, including Defendant Hoze, were instructed regarding, knowledgeable of and complied with all applicable Federal Motor Carrier Safety Regulations. 49 CFR 390.3(e);

79. Defendant Southern Pipe had a duty to properly instruct its drivers, including Defendant Hoze on the rules as regulations as contained in Part 392 of the Federal Motor Carrier Safety Regulations which pertain to the safe operation of a commercial motor vehicle.

80. Defendant Southern Pipe failed to properly instruct Defendant Hoze on the Federal Motor Carrier Safety Regulations, including those specifically referenced in this count.

81. Defendant Southern Pipe owed the general public, including Plaintiff, a duty to provide ongoing safety courses to its drivers, including Defendant Hoze.

82. Defendant Southern Pipe failed to provide adequate continuing safety courses to Defendant Hoze.

83. Defendant Southern Pipe had a duty to comply with all of the above and below listed duties, so as to protect the general public, including the Plaintiff, from the unsafe operation of commercial motor vehicles by its drivers.

84. Defendant Southern Pipe breached its duty to the general public, including the Plaintiff, by its failing to properly train Defendant Hoze, Defendant Southern Pipe' tractor-trailer driver, who was unqualified, incompetent and should not have been permitted to operate a tractor-trailer.

85. Based on Defendant Hoze's driving history, inadequate experience, and training, Defendant Southern Pipe knew or had information from which Defendant, in the exercise of ordinary care, should have known, that its driver operating its vehicle created a high degree of probability of injury to other persons operating or traveling in motor vehicles on public roads, streets and highways.

86. That Defendant Southern Pipe was negligent in failing to properly train its drivers, including Defendant Hoze, on the safe operation of a commercial motor vehicle and the Federal Motor Carrier Safety Regulations.

87. That Defendant Southern Pipe was negligent in failing to provide continuing education on the safe operation of a commercial motor vehicle and on the Federal Motor Carrier Safety Regulations.

88. That Defendant Hoze's aforementioned negligent actions and/or inactions resulted from Defendant Southern Pipe failing to properly train him in the safe operation of a commercial motor vehicle and/or the adherence to the Federal Motor Carrier Safety Regulations.

89. Plaintiff's damages, as aforementioned, were directly and proximately caused by Defendant Southern Pipe's breach of and failure to comply with its duty to properly train Defendant Hoze, its tractor-trailer driver.

**WHEREFORE** Plaintiff prays for judgment against Defendant Southern Pipe in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff, and for such other relief this Court deems just and proper under the circumstances.

**COUNT VIII**
**INDEPENDENT NEGLIGENCE AGAINST DEFENDANT SOUTHERN PIPE BASED UPON NEGLIGENT SUPERVISION**

**COMES NOW** Plaintiff and repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above in the General Allegations as if they were set forth herein at length against Defendant Southern Pipe and further states:

90. Defendant Southern Pipe owed the general public, including Plaintiff, a duty to continuously evaluate its drivers' performance, including through supervision, and to discharge an incompetent or unsafe driver before he/she injured the public or property.

91. Defendant Southern Pipe had a duty to not permit a driver, including Defendant Hoze, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. 49 C.F.R. §392.3.

92. Defendant Southern Pipe had a duty to inquire into the motor vehicle record of its drivers and give "great weight" to violations such as speeding or reckless driving. 49 C.F.R. §391.25.

93. Defendant Southern Pipe had a duty to ensure that its drivers were continuously physically qualified to safely operate a tractor-trailer. 49 C.F.R. §391.41, 391.43.

94. Defendant Southern Pipe had a duty to maintain a driver qualification file for each driver it employs. 49 C.F.R. §391.51

95. Defendant Southern Pipe had a duty to maintain a driver investigation history file for each driver it employs. 49 C.F.R. §391.53.

96. Defendant Southern Pipe had a duty to not allow or permit its on-duty drivers to be possession of drugs as listed in 49 C.F.R. §392.4(a).

97. Defendant Southern Pipe had a duty to not schedule a run, nor permit, nor require the operation of any commercial motor vehicle between points in such a period of time as would necessitate the commercial vehicle being operated at speeds greater than those prescribed by law. 49 C.F.R. §392.6.

98. Defendant Southern Pipe had a duty to ensure that its drivers, including Defendant Hoze, followed the Hours of Service Regulations and prohibit its employees from driving a commercial vehicle beyond the 11-hour driving limit in a 14-hour period. 49 CFR 395.3(a)(3).

99. Defendant Southern Pipe had a duty to ensure that its drivers, including Defendant Hoze, followed the Hours of Service Regulations and prohibit its employees from driving a commercial vehicle beyond the 8-hour limit since the end of the last off duty or sleeper period of at least 30 minutes. 49 CFR 395.3(a)(3)(ii).

100. Defendant Southern Pipe had a duty to prohibit its employees from driving a commercial vehicle while their driver's field of view was obstructed. 49 CFR 393.60(e).

101. Defendant Southern Pipe had a duty to ensure that its drivers, including Defendant Hoze, were instructed regarding, knowledgeable of and complied with all applicable Federal Motor Carrier Safety Regulations. 49 CFR 390.3(e).

102. Defendant Southern Pipe had a duty to test its drivers, including Defendant Hoze, for controlled substances as soon as practicable following an occurrence involving a commercial motor vehicle operating on a public road in commerce if the accident involved the loss of human life. 49 CFR 382.303(b).

103. Defendant Southern Pipe had a duty to comply with all of the above and below listed duties, Rules, Regulations and codes, so as to protect the general public, including the Plaintiff, from the unsafe operation of commercial motor vehicles by its drivers.

104. Defendant Southern Pipe breached the above duties to the general public, including to the Plaintiff, by its failing to properly supervise Defendant Hoze, Defendant Southern Pipe's tractor-trailer driver, who was unqualified, incompetent and should have been discharged prior to this incident.

105. Plaintiff's damages as aforementioned, were directly and proximately caused by Defendant Southern Pipe's breach of and failure to comply with its duty to properly train Defendant Hoze, its tractor-trailer driver.

**WHEREFORE** Plaintiff prays for judgment against Defendant Southern Pipe in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff, and for such other relief this Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED:

**O'LEARY, SHELTON, CORRIGAN,**
**PETERSON, DALTON & QUILLIN, LLC.**

By *__/s/ Michael J. Dalton, Jr.__*
Michael J. Dalton, Jr. #60963MO
James D. O'Leary, #45964MO
1034 South Brentwood Blvd.
Penthouse 1-A, 23rd Floor
St. Louis, MO 63117
Tel: 314-405-9000
Fax: 314-405-9999
dalton@osclaw.com
*Attorneys for Plaintiff*